IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-1164-CV-W-ODS |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his application for supplemental security income benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born on September 16, 1951, and has a high school education. Since the end of his military service, he has served as a security guard for various businesses. Plaintiff filed his application for disability on November 20, 2002, alleging disability since November 15, 2002, due to a seizure disorder.

On November 15, 2002, Plaintiff suffered a seizure and was taken to Truman Medical Center(TMC). R. at 106. Plaintiff was at a bus stop, felt light-headed, passed out and remembered nothing until he woke up at TMC. Plaintiff reported he had a history of seizures, but as a result of medication had not had a seizure for ten years. R. at 106. An examination revealed no back, extremity or musculoskeletal abnormalities, and an intact neurological function. A CT scan was performed and showed no abnormalities, but was suggestive of acute sinusitis. R. at 110.

Plaintiff claims that he has constant headaches and drowsiness as a result of his

medication. R. at 80. He states that he is very forgetful and must write things down in order to remember them. Plaintiff does not have any hobbies and watches the News or Oprah during the day. R. at 81. He no longer has a driver's license, but he does take the bus, walks, or gets a ride with his parents when he needs to get somewhere. R. at 82.

On November 22, 2002, Plaintiff returned to TMC for follow-up regarding his seizure disorder. R. at 97. Plaintiff reported having a headache for three days, which was relieved by Dilantin. He reported feeling dizzy and hot that morning, which he usually feels prior to experiencing a seizure. He felt better after laying down and relaxing. R. at 98. Plaintiff was instructed to take five Dilantin every day and return for a check up in a week. R. at 104.

On December 16, 2002, Plaintiff returned to TMC for a follow-up. R. at 138. The records indicate Plaintiff left his last clinic visit without being seen and did not have his Dilanitin level drawn. R. at 138. He reported no further seizure activity and his mood and affect were appropriate. R. at 139.

On December 24, 2002, Plaintiff underwent a Residual Physical Functional Capacity Assessment for his seizure disorder. R. at 114. Plaintiff was found to have no exertional limitations, postural limitations, manipulative limitations, visual limitations, or communicative limitations. R. 114 -118. Plaintiff was told to avoid all heights and hazards because of his seizure disorder. R. at 118. It was determined that Plaintiff was capable of all work with "seizure precautions with treatment and medication compliance." R. at 119.

Plaintiff presented to the VA Heartland West hospital as an outpatient on March 17, 2003. R. at 122. Plaintiff had a negative screen for depression, refused an influenza vaccination, declined nutrition/weight screening and received prostate cancer information. R. at 122. Dr. David Trimble reported Plaintiff's seizure disorder was stable. R. at 123. Plaintiff requested and was given a prescription for Dilantin.

Progress Notes from the VA on June 22, 2004, indicate Plaintiff inquired into assistance for his mortgage problems. Plaintiff told the social worker that he had a job, but would not be paid for two weeks. R. at 129. On July 22, 2004, Plaintiff requested four bus passes to go to possible job placements. R. at 126. On December 10, 2004,

Plaintiff reported being under stress with his “work situation,” but that his seizures were stable as long as he took his medication. R. at 141. Plaintiff had a negative screen for depression and reported that he had not been bothered by feeling depressed or hopeless. R. at 143.

A hearing was held on January 11, 2005 in front of Administrative Law Judge Jack R. Reed. R. at 157. The ALJ pointed out that Plaintiff had a hearing scheduled before him on October 14, 2004 and in 1993 and Plaintiff did not show up. R. at 157. The ALJ elicited testimony from Vocational Expert Amy Salva, who determined Plaintiff’s work history would be considered light level, semi-skilled or light level, unskilled. R. at 170. In his first hypothetical, the ALJ asked her to consider a restriction that would require a person to carry objects in excess of 20 or 25 pounds at a maximum and only occasionally, frequently carry 10 to 15 pounds, and engage in activity relatively less stressful. The VE opined such a person would probably not be able return to Plaintiff’s past work due to the possibility of stress. R. at 170-71. However, such a person could work as an assembler, packager, or laundry worker. When the ALJ added the restriction of poor memory to the extent that such person would have difficulty remembering and following instructions, the VE opined such a person would have difficulty maintaining any employment. R. at 171. Further, a person who would have to miss two to three days of work per month would not be able to maintain any employment. R. at 171.

The ALJ determined Plaintiff is not disabled and has not engaged in substantial gainful activity since the alleged onset of disability. R. at 20. Plaintiff’s epilepsy is a “severe” impairment, but he does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. § 404 Subpart P. R. at 20. The ALJ found that Plaintiff’s allegations regarding his limitations were not totally credible. Plaintiff cannot perform any of his past relevant work, but has the residual functional capacity (RFC) to perform light work in low stress environments. R. at 20. Finally, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform. R. at 20.

## II. DISCUSSION

A. Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

B. The ALJ Fully Developed the Record

Plaintiff first alleges the ALJ erred in failing to fully develop the record in order to make an informed decision regarding Plaintiff's mental impairments. Plaintif claims he is disabled due to a seizure disorder, not based upon mental impairments. R. at 65. During his interview for the Disability Report, the interviewer noted no unusual behavior. R. at 77. On December 16, 2002, TMC records indicate Plaintiff displayed an appropriate mood and affect. R. at 139. During a March 2003 visit to the VA hospital, Plaintiff had a negative screen for depression. R. at 122. Again, on December 14, Plaintiff had a negative screen for depression and reported that he had not been bothered by feeling depressed or hopeless. R. at 143. Further, during the administrative hearing, Plaintiff did not request further evaluation or development regarding his mental limitations. The ALJ is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability. Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003). The ALJ's

decision is supported by substantial evidence on the record.

C. The ALJ's Hypothetical

Plaintiff also alleges the ALJ erred in failing to include all of Plaintiff's documented impairments and symptoms into his hypothetical and ignored the VE's opinion that Plaintiff was precluded from employment. Based upon his consideration of the record, the ALJ found Plaintiff could, at the very least, perform light work in low stress environments. R. at 18. The state agency non-examining physician concluded Plaintiff had no exertional limitations based upon his review of the evidence. R. at 114-119. It was determined that Plaintiff was capable of all work with "seizure precautions with treatment and medication compliance." R. at 119. The ALJ did include a limitation for working in a low stress environment based upon Plaintiff's allegation that he is unable to handle stress. R. at 170.

An ALJ's hypothetical question must fully describe a claimant's impairments and include only the impairments the ALJ finds credible. Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995). The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible. R. at 18. The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and

examining physicians relating to such matters as:

> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

The ALJ found there were inconsistencies in the record as a whole. R. at 18. Plaintiff testified the seizures were brought on by stress or lack of sleep, but on his Claimant Questionnaire in December 2002, Plaintiff noted "nothing causes my symptoms." R. at 79 and 166-67. Plaintiff also indicated on the questionnaire that his headaches are constant, but stated that he reads constantly. R. at 81. The ALJ found this unlikely if Plaintiff were experiencing constant headaches. R. at 18. There were also discrepancies regarding Plaintiff's work record. The ALJ also found Plaintiff's work history characterized by fluctuating earnings and fairly frequent job changes suggesting Plaintiff may not be highly motivated for long-term employment. R. at 18. Most importantly, the evidence indicates Plaintiff's seizure disorder is under control when he takes his medication. R. at 18, 106, 141.

Taking into consideration the limitations he found credible, the ALJ formed a hypothetical including a restriction that would require a person to carry objects in excess of 20 or 25 pounds at a maximum and only occasionally, frequently carry 10 to 15 pounds, and engage in activity relatively less stressful. R. at 170. The VE determined that Plaintiff could not perform his past relevant work, but could perform work which existed in significant numbers in the national economy. R. at 171.

## III. CONCLUSION

Substantial evidence in the record as a whole supports the ALJ's findings regarding Plaintiff's credibility and residual functional capacity, and the VE's testimony provided a substantial basis for concluding Plaintiff can perform work in the national economy. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

DATE: June 20, 2006